UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                    :

COUNTY OF WESTCHESTER,              :
                                    :

                     Plaintiff,    :     13 Civ. 2741 (DLC)
                                    :

            -v-                :     <u>OPINION AND ORDER</u>
                                    :

UNITED STATES DEPARTMENT OF HOUSING AND :
URBAN DEVELOPMENT ("HUD"), and SHAUN    :
L.S. DONOVAN, AS SECRETARY OF HUD,      :
                                    :

                   Defendants.   :
                                    :
----------------------------------------X

Appearances:

For Plaintiff:

Robert F. Meehan
Westchester County Attorney's Office
148 Martine Avenue, 6th Floor
White Plains, NY 10601

For Defendants:

Preet Bharara
David J. Kennedy
Lara K. Eshkenazi
Benjamin H. Torrance
United States Attorney's Office, Southern District of New York
86 Chambers Street, 3d Floor
New York, NY 10007

DENISE COTE, District Judge:

     Plaintiff County of Westchester ("County") brings this

action, pursuant to the Administrative Procedure Act, 5 U.S.C.

§§ 701-706 ("APA"), and 42 U.S.C. § 12711, against defendants

the United States Department of Housing and Urban Development

("HUD" or "Agency") and Shaun L.S. Donovan, seeking review of a final administrative determination by HUD to withhold from the County Community Planning and Development Formula Grant Programs Funds ("CPD Funds") for the 2011 fiscal year ("FY2011").  The defendants have moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., or in the alternative, for summary judgment.  For the following reasons, the defendants' motion to dismiss is granted.

BACKGROUND

The facts and procedural history giving rise to this dispute have been described in several previous Opinions issued by this Court and the Second Circuit Court of Appeals.  See, e.g., United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty., 495 F.Supp.2d 375 (S.D.N.Y. 2007), United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty., 668 F.Supp.2d 548 (S.D.N.Y. 2009) ("2009 Opinion"); United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty., 712 F.3d 761 (2d Cir. 2013) ("Appeal Opinion").  The Court assumes familiarity with those Opinions.  Only those facts necessary to the resolution of the present motion are described below; they are either undisputed or taken from the County's complaint ("Complaint") and documents integral to the Complaint.

2

In order to receive certain federal funding from HUD, the County must certify that it will meet a variety of fair housing obligations, including that the County will affirmatively further fair housing ("AFFH").  See 42 U.S.C. § 5304(b)(2).[1]  As part of its duty to AFFH, the County was required to conduct an analysis of impediments, or AI, that analyzes the existence and impact of racial discrimination in barriers to housing opportunities.  In the 2009 Opinion, the Court ruled that the County's certifications to HUD were false as a matter of law. Later that year, on August 10, 2009, the United States and the County entered into a Stipulation and Order of Settlement and Dismissal ("Settlement"), which required the County inter alia to complete a revised AI analyzing impediments to fair housing based on race that must be deemed acceptable by HUD; promote a model zoning ordinance to advance fair housing; and promote legislation to ban source-of-income discrimination in housing.

On June 13, 2011, the County submitted to HUD its revised AI plan for certification for FY2011 ("2011 AI").[2]  By letter dated July 13, HUD found that the 2011 AI was not sufficient because it did not incorporate the corrective actions that HUD

---

[1] A County will submit its certification along with a proposed "Action Plan" for the relevant fiscal year of CPD Funds.  If HUD rejects an Action Plan, it is unable to release the CPD Funds allocated to the County for that fiscal year.

[2] The County submitted revisions to the 2011 AI on July 11, 2011.

had specified in a previous letter to the County.  In particular, HUD pointed to the AI's failure to address deficiencies in the "promotion of source-of-income legislation or plans to overcome exclusionary zoning practices."  HUD therefore rejected the County's certification that it would AFFH, and disapproved the County's FY2011 Action Plan as substantially incomplete.

On March 15, 2012, the County submitted its proposed certification for the 2012 fiscal year ("FY2012") CPD Funds.  On April 20, 2012, HUD notified the County that it intended to reject the County's FY2012 certification for the same reasons it had rejected the 2011 AI.[3]

On March 25, 2013, HUD informed the County that, to date, the County had not provided satisfactory certification that it would comply with its obligation to AFFH as part of its FY2011 Action Plan.  HUD warned that if the County did not provide "substantive assurance that [it] will comply with its civil rights obligations" by April 25, the Agency would begin the process of reallocating to other jurisdictions $7.4 million in CPD Funds that had been allocated to the County for FY2011.[4]

---

[3] By letter dated April 27, 2012, HUD did reject the County's FY2012 certification and thus disapproved the County's FY2012 Action Plan.

[4] The funds will revert to the Treasury on September 30, 2013. Once reallocated, the funds will no longer be available for administration by the County.

Specifically, HUD stated that it would approve CPD Funds for FY2011 and FY2012 if the County provided: (i) "[a] satisfactory plan, incorporated into the County's AI, to overcome exclusionary zoning practices within the eligible municipalities," and (ii) "[a] description of the County's plan to promote source of income legislation that . . . is incorporated into the County's AI."

By letter of April 4, the County argued that it had complied with all of HUD's procedural requirements and requested a hearing before the FY2011 CPD Funds were reallocated.  On April 16, HUD rejected the County's arguments and denied the request for a hearing ("April 16 Decision").

On April 24, the County filed the Complaint challenging the April 16 Decision.[5]  That same day, it submitted a revised AI to HUD.  On April 26, the Court denied the County's application for a temporary restraining order and declined to grant the County's application for a preliminary injunction.

The defendants filed the instant motion on June 21.  On June 26, the County Executive signed source-of-income legislation.  The defendants' motion became fully submitted on July 15.

---

[5] The County originally brought six claims against the defendants.  By Notice of Voluntary Dismissal, which was so ordered by the Court on June 14, the County dismissed counts V and VI of its Complaint.

DISCUSSION

The defendants move to dismiss the Complaint under Rules
12(b)(1) and 12(b)(6), Fed. R. Civ. P., arguing that the Court
lacks subject matter jurisdiction to decide the County's APA
claims and that the County has failed to state a claim under
both the APA and 42 U.S.C. § 12711.  "A case is properly
dismissed for lack of subject matter jurisdiction under Rule
12(b)(1) when the district court lacks the statutory or
constitutional power to adjudicate it."  Makarova v. United
States, 201 F.3d 110, 113 (2d Cir. 2000).  In reviewing a motion
to dismiss under Rule 12(b)(1), Fed. R. Civ. P., the court "must
accept as true all material factual allegations in the
complaint, but [is] not to draw inferences from the complaint
favorable to plaintiffs."  J.S. ex rel. N.S. v. Attica Cent.
Schs., 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).  A
district court may consider evidence outside the pleadings when
resolving a motion to dismiss for lack of subject matter
jurisdiction.  Id.  "The party invoking federal jurisdiction
bears the burden of establishing that jurisdiction exists."
Sharkey v. Quarantillo, 541 F.3d 75, 82 (2d Cir. 2008) (citation
omitted).

When deciding a motion to dismiss under Rule 12(b)(6), Fed.
R. Civ. P., the court must "accept all allegations in the

complaint as true and draw all inferences in the nonmoving party's favor."  LaFaro v. New York Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009) (citation omitted).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 678.  Accordingly, a court may disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Id.

Applying the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  "Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011).

A.  APA Claims

The County brings counts I, II, and III of the Complaint pursuant to the APA ("APA Claims"), challenging HUD's April 16

Decision under § 5304 to withhold FY2011 CPD Funds.[6]  The
County's APA Claims, however, must be dismissed, because the
April 16 Decision is not reviewable under the APA.

   "Although there is a strong presumption in favor of
judicial review of agency action, there are threshold
limitations on the scope of APA review." Sharkey, 541 F.3d at
87; see Bowen v. Michigan Acad. of Family Physicians, 476 U.S.
667, 670, 673 (1986).  As relevant here, the APA expressly
excludes from judicial review final agency actions that are
"committed to agency discretion by law."  5 U.S.C. § 701(a)(2);
see Sharkey, 541 F.3d at 91.  This restriction applies where the
statute or regulation governing the challenged agency action "is
drawn so that a court would have no meaningful standard against
which to judge the agency's exercise of discretion." Heckler v.
Chaney, 470 U.S. 821, 830 (1985).  Section 702(a)(2) thus
"requires careful examination of the statute on which the claim
of agency illegality is based and requires dismissal when there
is no law to apply." Lunney v. United States, 319 F.3d 550, 558
(2d Cir. 2003) (citation omitted).  "The APA is not an
independent grant of subject matter jurisdiction." Id. at 557.[7]

---

[6] There can be no reasonable dispute that the County's claims of
illegality center on the Agency's decisions taken pursuant to
the certification requirements of § 5304.  See Appeal Opinion,
712 F.3d at 765; 2009 Opinion, 668 F.Supp.2d at 566.

[7] The Second Circuit has "suggested that each of these threshold
limitations delimits the subject matter jurisdiction of federal

Section 5304 expressly commits certification decisions, like the April 16 Decision, to the Agency's discretion: it requires the County to certify "to the satisfaction of the Secretary" that it will, inter alia, AFFH.  42 U.S.C. § 5304(b)(2).  The statute also provides no basis by which the Court might assess the Agency's decision that the County has not demonstrated that it will AFFH.  "[C]ourts may only ascertain whether the Secretary based his decision on a consideration of the relevant statutory factors and may not substitute their own judgment for that of the Secretary."  U.S. Dept. of Interior v. 16.03 Acres of Land, 26 F.3d 349, 356 (2d Cir. 1994) (describing scheme of judicial review under the APA).  The statute's failure to specify the "standard against which to judge" HUD's April 16 Decision thus excludes it from judicial review.  Heckler, 470 U.S. at 830; see Sharkey, 541 F.3d at 91 (the restriction excluding final agency actions from judicial review under the APA applies "where statutes are drawn in such broad terms that in a given case there is no law to apply" (citation omitted)); cf. Conn Dept Children Youth Servs v. Dept. of Health and Hum.

---

court."  Sharkey, 541 F.3d at 87.  "It is uncertain[, however,] in light of recent Supreme Court precedent whether these threshold limitations are truly jurisdictional or are rather essential elements of the APA claims for relief."  Id.  The Court need not resolve this dispute here, as it is of no consequence to the present case.  The APA precludes judicial review of the Agency's certification decision, and thus, under either interpretation, the County's APA Claims must be dismissed.

Servs., 9 F.3d 981, 985 (D.C. Cir. 1993) (finding judicial review appropriate where the statute "explicitly sets forth the factors the Secretary must take into account" in rendering its decision).

The County fails to point to any "meaningful standard" in the relevant statute or regulations by which the Agency's exercise of discretion might be assessed.  The County contends that 42 U.S.C. § 12704(21), which defines the County's "certification" as a "written assertion, based on supporting evidence," provides the necessary standard to direct judicial review.  But the mere recitation in § 12704(21) that the Secretary must use "supporting evidence" in rendering its decision does not provide any meaningful "law to apply," Lunney, 319 F.3d at 558 (citation omitted), particularly given that § 12704(21) also explicitly commits any assessment of the veracity of that "supporting evidence" to the Agency's discretion.  42 U.S.C. § 12704(21) ("the assertion shall be deemed to be accurate for purposes of this Act, unless the Secretary determines otherwise . . ." (emphasis added)). Instead, the statute and regulations here are consistently "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," rendering judicial review inappropriate.  Heckler, 470 U.S. at 830.

The County's argument that the APA's "arbitrary and capricious" standard can be used to assess the April 16 Decision also fails.  See 5 U.S.C. § 706(2)(a).  The "arbitrary and capricious" standard "does not by itself provide a meaningful standard of review" under the APA.  Schneider v. Feinberg, 345 F.3d 135, 148 (2d Cir. 2003) (citation omitted).  In sum, since there is "no law to apply" to assess the challenged Agency action here, the County's claims under the APA are dismissed. Lunney, 319 F.3d at 558 (citation omitted).

The County's remaining arguments are also unsuccessful. Insofar as the County contends that the hearing requirement of § 5311 counsels in favor of APA review here, it is incorrect, not least because § 5311 is not implicated in this case. Section 5311 provides that a County is entitled to reasonable notice and an opportunity for a hearing prior to the "termination, reduction, or limitation of previously awarded grant payments;" the section is inapplicable here because the challenged FY2011 CPD Funds have not been awarded to the County. The County's arguments analogizing the present case to judicial review under the Social Security Act ("SSA") are similarly unpersuasive; the SSA contains an express provision for judicial review and is thus materially distinguishable from the law governing the April 16 Decision here.  Compare 42 U.S.C. § 405(g) with 42 U.S.C. § 5304.

11

B.  Section 12711 Claim

Count IV of the Complaint, brought pursuant to 42 U.S.C. § 12711, also must be dismissed because the County has failed to state a claim under that section.  Section 12711 states in relevant part that

> the Secretary shall not establish any criteria for allocating or denying funds made available under programs administered by the Secretary based on the adoption, continuation, or discontinuation by a jurisdiction of any public policy, regulation, or law that is (1) adopted, continued, or discontinued in accordance with the jurisdiction's duly established authority, and (2) not in violation of any Federal law.

Thus, to state a claim for relief under this section, the County must demonstrate inter alia that HUD "established . . . criteria for allocating or denying funds" that was "based on the adoption . . . of any . . . law" and that law was "not in violation of any Federal law."  Cf. Iqbal, 556 U.S. at 678 (for a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The County alleges that HUD improperly conditioned its receipt of CPD Funds on the implementation of source-of-income legislation in contravention of § 12711.  According to the Complaint, the Agency denied the County CPD Funds based on its determination that the County had not "update[d] its AI as appropriate to describe the County's plans to promote" such

12

legislation, and thus had failed adequately to certify that it would AFFH.  In particular, the Complaint refers to paragraph 33(g) of the Settlement, by which the County agreed to "promote, through the County Executive, legislation currently before the Board of Legislators to ban 'source-of-income' discrimination in housing[,]" and claims that HUD improperly withheld funding after finding that the AI did not satisfy that term.  The Complaint states that in a May 13, 2011 letter, the Agency determined that the 2011 AI was inadequate with respect to paragraph 33(g) of the Settlement because it did not (i) describe the text of any proposed source-of-income legislation, (ii) detail a plan or any steps taken "to garner support for passage" of such legislation, (iii) discuss efforts to "inform the public . . . about the importance" of such legislation, or (iv) provide assurances that, if any such legislation is passed by the legislature, it will be supported by the County Executive.

Even when read in the light most favorable to the plaintiff, the Complaint fails to plead that the April 16 Decision breached § 12711 in any way.  As described in the Complaint, it was the Settlement reached by the parties and not criteria established by HUD that required promotion of the

13

source-of-income legislation.[8]  Moreover, any action by the
County must be in compliance with federal law.  If it is not,
then § 12711 permits HUD to deny funds premised on the illegal
action.  The Complaint does not allege that the County's failure
to abide by its Court ordered Settlement in all respects
complied with federal law.  Nor are the County's bare assertions
that HUD "forcing the County . . . to adopt source-of-income
legislation, under pains of losing CPD [F]unds, clearly violates
42 U.S.C. § 12711" entitled to the assumption of truth.  See
Iqbal, 556 U.S. at 681.[9]  As a result, the County has not
plausibly alleged a violation of § 12711.

---

[8] Section 12711 was enacted with the aim to protect local
authorities from undue Agency "interven[tion] in State and local
decision-making."  H.R. Conf. Rep. No. 101-943 (1990).  HUD's
reliance on the terms of the Settlement, and requiring the
County to abide by the County's own commitments, is hardly undue
interference with local government decision-making.

[9] Since count IV is properly dismissed for the reasons stated
above, it is unnecessary to discuss whether this claim has also
been rendered moot by the County Executive signing source-of-
income legislation on June 26, after the defendants' motion to
dismiss was filed.

14

CONCLUSION

The defendants' June 21, 2013 motion is granted.  The Clerk of Court shall close the case.


SO ORDERED:

Dated:      New York, New York
            August 14, 2013

                                    _____
                                              DENISE COTE
                                    United States District Judge